IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL J. DANIELS,<br><br>          Plaintiff,<br><br>     v.<br><br>LAURIE E. CYNKIN, et al.,<br><br>          Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 13-6027 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

Michael J. Daniels
204 31st Street
Ocean City, NJ 08226
     Pro Se Plaintiff

John-Paul Madden, Esq.
Madden & Madden
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, NJ 08033-0389
     Attorney for Defendants

**SIMANDLE, Chief Judge:**

**I.     INTRODUCTION**

Plaintiff Michael J. Daniels, who is representing himself
pro se, brought this action against Defendants Laurie E. Cynkin,
Andrew M. Rosenberg, The Susan J. Snyder Living Trust ("The
Living Trust"), and The Estate of Susan J. Snyder ("The
Estate"). Plaintiff was previously married to Susan J. Snyder,
who obtained a divorce judgment against him in Florida state

court and died shortly thereafter. Cynkin and Rosenberg are Snyder's children and heirs, Snyder transferred property to The Living Trust before she died, and The Estate handled her remaining assets after she died. Plaintiff alleges that Snyder fraudulently induced him to sign a prenuptial agreement and that Snyder's divorce proceedings against him in Florida state court violated his constitutional rights. Plaintiff seeks reinstatement of his Social Security survivor benefits, attorney's fees from the Florida divorce proceedings, a declaration that the prenuptial agreement is void, and modification, vacation, or reversal of the Florida court's divorce judgment.

This matter comes before Court on Defendants' motion to dismiss [Docket Item 6] all of Plaintiff's claims. Defendant's motion will be granted because the Court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine, the domestic relations exception, and Social Security jurisdictional requirements.

## II.   BACKGROUND

### A.   Allegations in Plaintiff's Complaint

Plaintiff signed a prenuptial agreement with Susan E. Snyder and then married her.[1] (Compl. ¶¶ 20-21.) Plaintiff

---

[1] Plaintiff's allegations are summarized here as completely as possible.

alleges that Snyder induced him to sign the pre-nuptial agreement by promising to "provide for the Plaintiff as she had provided for Mr. Millardi [her second husband], as long as we were married." (Id. ¶¶ 17-18.) Plaintiff alleges that Snyder originally "did fulfill the promise she made to the Plaintiff by making provisions for him in her will." (Id. ¶ 22.) But he alleges that she "violated the agreement she had made with the plaintiff prior to the signing of the prenuptial agreement by her act of disinheriting the husband in 2009." (Id. ¶ 56.)

While they were married, Plaintiff applied for Social Security benefits and, in addition to his own benefits, he allegedly received an additional $186.00 per month because he was married to Snyder. (Id. ¶¶ 23-24.)

The Florida state court issued a divorce decree on August 16, 2010 and, according to Plaintiff, the divorce judgment was signed in 2011. (Id. ¶ 37.) Plaintiff alleges that the divorce proceedings in Florida state court violated his constitutional rights because the trial judge refused to bifurcate the trial proceedings, prohibited Plaintiff from speaking on his own behalf in court, and signed the divorce decree despite a lack of evidence that the marriage was irretrievably broken. (Id. ¶ 33, 35, 38.) Plaintiff alleges that the late Susan Snyder "repeatedly misled or intentionally did not tell the truth to trial court . . . ." (Id. ¶ 40.)

3

Snyder died in 2011, after the divorce became final. (Id. ¶ 55.) After her death, Plaintiff allegedly discovered that she violated the terms of their prenuptial agreement. (Id. ¶ 56.) Plaintiff then filed a motion to modify the trial court's decision because "the agreement was null and void due to the breach of the condition precedent by my former wife." (Id. ¶ 57.) His motion was dismissed. (Id.) Plaintiff filed an appeal, which was denied. (Id. ¶ 63.) He filed a motion to set aside the divorce and an appeal to the Florida Supreme Court, both of which were denied. (Id. ¶ 63.) Plaintiff filed another appeal addressing the trial court's denial of an amended complaint and to dismiss his complaint, which was pending at the time he filed his present Complaint. (Id. ¶ 65.)

Plaintiff argues that "[t]o allow the Final Judgment of Dissolution of Marriage to remain undisturbed . . . would be in violation of the constitutional rights of the Former Husband . . . ." (Id. ¶ 63.) He claims that "[t]he only possible conclusion that can be made of the reason for the divorce is that the plaintiff had Parkinson's disease. This . . . violated the persons with disabilities acts . . . ." (Id. ¶ 49(3).) Plaintiff also asserts that the Florida trial court's "finding that both parties worked on the premarital agreement ignores the facts." (Id. ¶ 49(5).)

4

Defendants Laurie Cynkin and Andrew Rosenberg are Snyder's heirs. (Id. ¶ 51.) Plaintiff alleges that Cynkin and Rosenberg "agreed to keep the benefits received from their mother and the[y] agreed amongst themselves to keep those gains for themselves and for their mutual benefit." (Id. ¶ 31(2).) Plaintiff emphasizes that "[a]ll of the defendants did agree to keep the benefits received from the Trial Court making up findings to support his conclusions in spite of the fact that no evidence existed to support the findings." (Id. ¶ 31(4).)

## B. Divorce Judgment

Plaintiff attached to his Complaint the August 17, 2010 "Final Judgment of Dissolution of Marriage" from the Seventh Judicial Circuit in St. Johns County, Florida.[2] (Compl. Ex. A.) The judgment specifies that the St. Johns court held a trial on August 9, 2010; wife Susan E. Snyder was represented by attorney Leanna Freeman; and husband Michael J. Daniels was represented by attorney Sean Sheppard. (Id. at 1.) The divorce court found "that the parties were married to one another on December 20,

---

[2] The Court has summarized the divorce judgment because it is explicitly discussed in the Complaint and forms the basis of Plaintiff's claims. "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered . . . ." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).

2002, . . . but that the marriage of the parties is now irretrievably broken and should be dissolved." (Id. at 1.)

The divorce court discussed the parties' prenuptial agreement, noting that "[t]he Husband testified . . . that there was no fraud, duress, or misrepresentation on the part of the Wife. . . . The Husband in hindsight now believes that the Antenuptial Agreement is not fair to him as it did not address the issues of alimony or how to deal with appreciation of the value of non-marital assets." (Id. at 4.) The divorce court "determine[d] that the Antenuptial Agreement of the parties is valid and not subject to being set aside. Its terms are to be applied in this case." (Id. at 7.)

The judgment noted that "[t]here is no evidence that the Husband has sought Social Security Disability payments"; "prior to the marriage he earned slightly less than $10,000 annually"; and "he now receives approximately the same amount in Social Security benefits, mostly as a result of the Wife's disability." (Id. at 3.)

The divorce court noted that Snyder entered the marriage with several properties, the parties transferred her property to the Susan Snyder Living Trust, and, therefore, "the Husband has no claim on any purported increase in any value of the real property as the increase in value is not to the Wife individually, but to the trust as a trust asset." (Id. at 4.)

6

The judgment concludes that "[t]he marriage of the parties, SUSAN J. SNYDER, Wife, and MICHAEL J. DANIELS, Husband, is hereby dissolved and the parties are restored to the status of being single and unmarried."[3] (Id. at 7.)

### C. Claims

Plaintiff asserts claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 for violation of his 5th, 9th, and 14th Amendment rights, his privacy rights, and his fundamental right to family integrity.[4] He also "possibly" alleges claims under the Americans with Disabilities Act. (Id. ¶ 64(G).)

Plaintiff seeks relief declaring his entitlement to, and awarding, Social Security benefits, and modifying or vacating the divorce decree, and voiding the prenuptial agreement due to his former wife's breach of condition precedent, and an award of attorney fees. (Compl. at 19-20.) Additionally, Plaintiff seeks an award of damages equal to the present value of his proper

---

[3] The Florida court's judgment, which is attached to the Complaint, has seven out of eight pages, but the last page is missing.

[4] In addition to federal question jurisdiction, the Court also has diversity jurisdiction. Plaintiff alleges that the amount-in-controversy exceeds $250,000. (Compl. ¶ 1(c).) Plaintiff is a New Jersey resident, Defendant Laurie Cynkin is a Maryland resident, Defendant Andrew M. Rosenberg is a Virginia resident, Defendant The Susan J. Snyder Living Trust is based in Maryland or Virginia, and Defendant The Estate of Susan J. Snyder is in Florida, where Snyder lived before she died. (Id. ¶¶ 2-6.)

Social Security benefits, and for money damages, and for such
other relief as may be just and proper. (Id. at 22.)

### D. Parties' Arguments

Defendants argue that Plaintiff's Complaint should be
dismissed for lack of jurisdiction and also pursuant to Fed. R.
Civ. P. 12(b)(6). Jurisdictionally, Defendants assert that any
claim for Social Security benefits is not properly before the
Court and Plaintiff's claims are barred by the Rooker-Feldman
doctrine. On the merits, Defendants assert that Plaintiff's
claims are barred by res judicata and collateral estoppel;
Plaintiff has no individual rights under the 9th Amendment; the
alleged violation of Plaintiff's right to family integrity is
unsupported; Plaintiff's § 1983 claims fail because Defendants
are not government actors; and Plaintiff's § 1985 claims fail
because Plaintiff has not alleged a conspiracy based on
discriminatory animus.

In his opposition [Docket Item 8], Plaintiff argues:
Defendants failed to address the breach of contract claim; the
Court should exercise pendent jurisdiction over the civil rights
claims; the trial court's judgment was arbitrary because there
was a lack of evidence; Snyder did not meet her burden of proof
in the divorce trial; Snyder's heirs know that she "was less
than candid at the trial court" and are hiding her breach of
contract from the courts, (Pl. Opp'n at 8); Defendant Rosenberg

8

is a state actor under § 1983 because he is the executor of
Snyder's will; Plaintiff's Ninth Amendment claim is valid
because he asserts that "Florida does not have the absolute
unrestricted right to issue a divorce decree because the now
former wife wanted one," (id. at 11); Social Security benefits
cannot be terminated without due process of law; "[n]o state
court judge has the absolute right to grant a divorce decree,
the judge must follow the state statute which the Florida court
did not do," (id.); "[m]arriage is a fundamental right and is
entitled to the guaranteed right of privacy," (id. at 13);
Plaintiff properly alleged a conspiracy with discriminatory
animus against a class of one, i.e., the Plaintiff; to cure any
Rooker-Feldman issues, Plaintiff asks the Court to "allow the
Plaintiff to file an amendment to ask for an injunction against
the commissioner to challenge the state courts [sic]
determination," (id. at 14); Plaintiff's claim for Social
Security benefits is properly before the Court because "the
commissioner will not and cannot disturb the findings of the
state trial court so to require the Plaintiff to run around in
the commissioner office is a waste of the Plaintiff efforts,"
(id. at 14); "Rooker-Feldman is inapplicable because an appeal
remained pending in the state court at the time the federal
action was filed," (id. at 15); and res judicata and collateral

estoppel do not apply because the trial court's decision was arbitrary.[5]

In their reply [Docket Item 10], Defendants argue that Plaintiff's opposition shows that he is unequivocally seeking review of the Florida divorce judgment, which the Rooker-Feldman doctrine prohibits, and there is no legal basis to classify Snyder's heirs and the executor of her estate as state actors.

## III. STANDARD OF REVIEW

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556

---

[5] Plaintiff also pleads additional facts in his Opposition. For example, he states that before the Florida divorce trial, the parties had to attend a master's hearing. (Pl. Opp'n at 4.) At the hearing, "the master stated to the Plaintiff that the custom of St. Johns County would not look favorably upon any request for economic support from the wife to the husband especially his claim for alimony." (Id.) Plaintiff also alleges that "the trial judge told the plaintiff prior to presenting their case that the court did not see any possible recovery due the plaintiff because of the wording of the pre-nuptial agreement." (Id.) Plaintiff also asserts that Defendant Rosenberg is the executor of his mother's estate, is a licensed Maryland attorney, and has a duty to tell the Court about the newly discovered evidence of his mother's breach of the prenuptial agreement. (Id. at 5.) He alleges that the newly discovered evidence, which should obviate the divorce court's judgment, is a change to Snyder's will stating that she disinherits Plaintiff and that she is "not married. All references to MICHAEL JOHN DANIELS in this my Last Will and Testament shall be deleted." (Id. at 7.) The Court may not consider facts pled outside of the Complaint but, regardless, these facts are immaterial to the Court's jurisdictional analysis.

U.S. 662, 678 (2009) (quotation omitted). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (quotation omitted).

## IV.  DISCUSSION

### A. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine "prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." Lance v. Dennis, 546 U.S. 459, 460 (2006) (quotations omitted). In other words, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Id. at 463. "Prohibited appellate review consists of a review of the proceedings already conducted by the lower tribunal to determine whether it reached its result in accordance with law." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 169 (3d Cir. 2010) (quotation omitted). The doctrine "applies only in limited circumstances, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." Lance, 546 U.S. at 466 (citation omitted). It has four requirements: "(1) the federal plaintiff lost in state

11

court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining, 615 F.3d at 166 (quotation omitted).

These four requirements are all satisfied here. Plaintiff lost in state court because Snyder received a divorce and the trial judge upheld the prenuptial agreement; Plaintiff complains of injuries caused by the state court judgment, namely the loss of Social Security survivor benefits and assets from Snyder's estate; the state court judgment was rendered before this action was filed; and Plaintiff asks this Court to review and reject the state court judgment. Plaintiff specifically alleges that "[t]o allow the Final Judgment of Dissolution of Marriage to remain undisturbed . . . would be in violation of the constitutional rights of the Former Husband," (Compl. ¶ 63); that the Florida trial court's "finding that both parties worked on the premarital agreement ignores the facts," (id. ¶ 49(5)); that Snyder "repeatedly misled or intentionally did not tell the truth to trial court," (id. ¶ 40); and that the state court proceedings violated his constitutional rights because the trial judge refused to bifurcate the trial proceedings, prohibited Plaintiff from speaking on his own behalf in court, and signed the divorce decree despite a lack of evidence that the marriage

12

was irretrievably broken, (id. ¶ 33, 35, 38). His Complaint clearly asks this court to review and reject the state court judgment.

In Mayercheck v. Judges of Pennsylvania Supreme Court, 395 F. App'x 839 (3d Cir. 2010), the Third Circuit examined a similar challenge to a divorce judgment and held that the district court lacked jurisdiction pursuant to the Rooker-Feldman doctrine. In Mayercheck, the husband alleged that his state court divorce proceedings deprived him of his constitutional rights, that the state court judge violated various procedural rules, and that his ex-wife made false statements to the divorce court regarding a divorce contract they made a few years before she filed for divorce. The district court had dismissed the Mayercheck case for lack of jurisdiction under the Rooker-Feldman doctrine, and the Third Circuit affirmed this determination: "Mayercheck's complaint sought enforcement of all of the provisions of the alleged 2000 divorce contract, and he based his claims for damages on charges that the state courts made a series of wrongful decisions . . . . He explicitly requested that the state courts' decisions be overturned. Accordingly, the District Court correctly concluded that it lacked jurisdiction to review his claims." Id. at 842. Mayercheck is analogous, and this Court therefore lacks jurisdiction pursuant to the Rooker-Feldman doctrine.

Plaintiff argues that the Rooker-Feldman doctrine does not apply because an appeal of the divorce judgment was pending in state court when he filed this federal lawsuit. Plaintiff cites Nicholson v. Shafe, 558 F.3d 1266, 1279 (11th Cir. 2009), in which the Eleventh Circuit held that "state proceedings have not ended for purposes of Rooker–Feldman when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action . . . ." In Shafe, "on October 5, 2007, the jury returned a verdict [in state court] . . . . On November 1, 2007, the Appellants filed an appeal. On November 1, 2007, the same day that they appealed the jury's verdict in the state court action, the Appellants filed a 'Complaint for Declaratory Judgment'" in federal district court. Id. at 1269. In other words, in Shafe, the federal district court action was filed on the same day as the state court appeal.

In this case, Plaintiff's Complaint alleges that, after Snyder's death, Plaintiff filed a motion to modify the trial court's decision, and it was dismissed. (Compl. ¶ 57.) He filed an appeal, which was denied. (Id. ¶ 63.) He filed a motion to set aside the divorce and an appeal to the Florida Supreme Court, both of which were denied. (Id. ¶ 63.) Plaintiff filed another appeal, which was pending at the time he filed his

14

Complaint. (Id. ¶ 65.) Essentially, Plaintiff filed this action after the Florida Supreme Court denied his appeal.

The Third Circuit has not yet ruled on the question of when state court proceedings have ended for Rooker-Feldman purposes but, even if Shafe were the governing law of this Circuit, its holding would not apply here. In Shafe, the appeal that precluded Rooker-Feldman's application was the first state court appeal. In this case, Plaintiff had filed two appeals that were denied before filing the third appeal that he claims renders the Rooker-Feldman doctrine unavailable. After a trial court issues a final judgment, a litigant cannot file an endless number of appeals in state court. Plaintiff cannot use his repeated appeals to preclude this Court from applying the Rooker-Feldman doctrine. Certainly, the divorce judgment he assails here was final when the state Supreme Court denied his appeal, and his later appeal is irrelevant for purposes of Rooker-Feldman.

Furthermore, the Shafe decision was based on the Supreme Court's decision in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005), in which the Supreme Court held that Rooker-Feldman "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." In Exxon, Saudi Basic Industries Corp.

("SABIC") preemptively sued two ExxonMobil subsidiaries in Delaware Superior Court seeking a declaratory judgment that its royalty charges were proper under the parties' joint venture agreements; two weeks later, ExxonMobil and its subsidiaries countersued SABIC in the United States District Court for the District of New Jersey, alleging that SABIC overcharged for sublicenses. The state suit went to trial, and ExxonMobil obtained a verdict of over $400 million. Before the state-court trial, SABIC moved to dismiss the federal suit; the district court denied the motion to dismiss and SABIC filed an interlocutory appeal. The Third Circuit heard argument after the state-court jury verdict was issued and held that the Rooker-Feldman doctrine applied. The Supreme Court reversed the Third Circuit and held that "neither Rooker nor Feldman supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains sub judice in a federal court." Id. at 292. In ExxonMobil, the Supreme Court specifically noted that there was "properly invoked concurrent jurisdiction," which is absent here. Essentially, ExxonMobil addressed a situation in which the federal lawsuit was filed two weeks after the related state court lawsuit was filed; there was no final judgment in the state court case before the federal lawsuit was filed. The present case involves wholly different circumstances.

16

The Court's holding here is narrow: When there has been a final state court judgment and when that final judgment has been appealed twice and when both appeals have been denied, the filing of a third appeal does not preclude the Court from applying the Rooker-Feldman doctrine. Defendant's motion to dismiss will be granted because the Court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine, which precludes this Court from exercising jurisdiction over Plaintiff's challenge to the divorce court's judgment.

Plaintiff argues that, to cure any Rooker-Feldman issues, the Court should "allow the Plaintiff to file an amendment to ask for an injunction against the commissioner to challenge the state courts [sic] determination." (Pl. Opp'n at 14.) This argument is incomprehensible, but the Court need not decipher it because it is immaterial. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see also Newton v. First Union Nat. Bank, 316 F. Supp. 2d 225, 233 (E.D. Pa. 2004) ("Because the Rooker-Feldman doctrine determines jurisdiction, if applicable, it effectively ends the litigation in federal court . . ."). The Court has determined that it lacks subject matter jurisdiction, and this case must be dismissed.[6]

---

[6] To the extent that Plaintiff claims breach of contract under the Court's diversity jurisdiction, the Court also cannot

### B. Domestic Relations Exception

Even if the Rooker-Feldman doctrine did not apply, which it does, the Court would also lack jurisdiction over this case pursuant to the domestic relations exception to federal jurisdiction.

The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees," Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992), because it has long been settled that "[t]he whole subject of the domestic relations of husband and wife . . . belongs to the laws of the states, and not to the laws of the United States," Ex parte Burrus, 136 U.S. 586, 593-94 (1890). In Mayercheck, which is discussed supra and which involved a losing party's challenge in federal court to a state court divorce judgment, the Third Circuit held that, in addition to lacking jurisdiction under Rooker-Feldman, "[t]he District Court also properly determined that it lacked jurisdiction under the domestic relations exception to federal jurisdiction." Mayercheck, 395 F. App'x at 842. Plaintiff asks the Court to review the divorce

---

exercise such jurisdiction because the validity of the prenuptial agreement was already adjudicated in state court and a successful contract claim here would be inconsistent with the final judgment of the Florida court because it would necessarily undermine the Florida judgment.

judgment issued by a state court, and this Court may not insert itself into divorce proceedings.

Defendant's motion to dismiss will be granted because the Court lacks jurisdiction pursuant to the domestic relations exception.

### C. No Jurisdiction Over Social Security Claims

Finally, the Court lacks jurisdiction to review Plaintiff's claims regarding his entitlement to Social Security benefits.

Congress has specified that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days . . . ." 42 U.S.C. § 405(g). "[J]udicial review is barred absent a 'final decision' by the Commissioner of Social Security." Fitzgerald v. Apfel, 148 F.3d 232, 234 (3d Cir. 1998) (citation omitted). The Supreme Court specifically "require[s] that a claim for benefits shall have been presented to the Secretary." Mathews v. Eldridge, 424 U.S. 319, 328 (1976). And this requirement "is an essential and distinct precondition for § 405(g) jurisdiction . . . ." Id. at 329. Plaintiff has not shown that the Commissioner of Social Security made a final decision regarding his Social Security benefits and, therefore, the Court cannot assess his claim that he is entitled to Social Security survivor benefits. Moreover, Plaintiff has not even joined the

19

Commissioner of the Social Security Administration as a
defendant.

Plaintiff argues that his claim for Social Security
benefits is properly before the Court because "the commissioner
will not and cannot disturb the findings of the state trial
court so to require the Plaintiff to run around in the
commissioner office is a waste of the Plaintiff efforts." (Pl.
Opp'n at 14.) The Court cannot assume jurisdiction simply
because Plaintiff argues that an appeal to the Social Security
jurisdiction will not be fruitful. Plaintiff has not cited any
case law vesting federal courts with jurisdiction to review
Social Security claims absent a final decision from the
Commissioner based on an argument that seeking review from the
Social Security Administration will waste a party's time. Absent
a final decision from the Commissioner, the Court lacks
jurisdiction.

**V.    CONCLUSION**

The Court lacks subject matter jurisdiction over this case
pursuant to the Rooker-Feldman doctrine, the domestic relations
exception, and federal law regarding finality for Social
Security appeals. Because the Court lacks subject matter
jurisdiction, the Court will not, and indeed cannot, address the
parties' arguments about the merits of Plaintiff's claims. An

accompanying Order will be entered dismissing the Complaint for lack of subject matter jurisdiction.


**July 23, 2014**                           **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge